UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ADNAN KHAWAJA, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   CIVIL ACTION NO. H-11-3603 |
| | § |
| ROBERT S. MUELLER, III, et al., | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 10). After considering the Motion, all responses thereto, and the applicable law, the Court finds that Defendants' Motion should be granted.

### I.  BACKGROUND[1]

Plaintiff brings this action seeking review of Defendants' wrongful denial of his naturalization application. (Compl. ¶ 1.) Plaintiff applied to become a U.S. citizen under 8 U.S.C. § 1427(a)(1) by filing Form N-400 with the USCIS in 2009. (Compl. ¶ 18.) On September 23, 2010, Plaintiff appeared for an interview with United States Citizenship and Immigration Services ("USCIS"), and passed the English, U.S. History, and U.S. Government tests. (*Id.*)  Defendants issued a denial of Plaintiff's application (Doc. No. 1-1), stating that he failed to demonstrate good moral character. (Compl. ¶ 19.) Plaintiff filed an appeal (Doc. No. 1-2), which USCIS also denied (Doc. No. 1-3). (Compl. ¶¶ 20, 21.)

Plaintiff brings claims for de novo review of his naturalization application, under 8 U.S.C. § 1421(c), and for review under the Administrative Procedures Act ("APA"), 5 U.S.C. §

---

[1] The following facts are drawn from Plaintiff's First Petition ("Complaint") (Doc. No. 1) and are accepted as true for purposes of the Motion to Dismiss.

1

701 et seq.  Plaintiff also requests attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

## II.  LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and must dismiss a case when the plaintiff fails to establish subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.  Because federal courts possess an independent obligation to examine the basis of jurisdiction, *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981), they may do so even in the absence of a motion to dismiss.  Indeed, a district court must dismiss an action if it determines "at any time" that it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  The burden of establishing federal jurisdiction rests on the party seeking the federal forum.  *Stockman*, 138 F.3d at 151.

### B.  Failure to State a Claim

A court may also dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds

2

for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only

that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010). The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

## III. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

An applicant seeking to be naturalized may challenge the USCIS's denial of citizenship pursuant to 8 U.S.C. § 1421(c). The statute provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421 (c). Defendants do not dispute that Plaintiff requested a hearing before an immigration officer after his application was denied initially. (Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, Doc. No. 1-2.) Rather, Defendants contend that Plaintiff failed to exhaust his administrative remedies by refusing to produce documents and answer questions at his interview, thus depriving this Court of subject matter jurisdiction.

Defendants cite *Johnson v. Bergland*, 614 F.2d 415 (5th Cir. 1980), for the proposition that "if the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures[,] the Court should not reach the merits either." *Id.* at 418. In *Bergland*, the agency had not made a determination on the merits, but rather "cancelled" the administrative complaints pursuant to a regulation allowing the agency to "cancel a complaint because of failure of the complainant to prosecute the complaint." *Id.* at 417 (citing 5 C.F.R. § 713.215). Similarly, in *Omari v. Gonzales*, 3:05-CV-0397-P, 2005 WL 2036498 (N.D. Tex. Aug. 11, 2005), the court found that the plaintiff had failed to exhaust administrative remedies because the INS explicitly denied Plaintiff's application for failure to submit the documentation requested; there was no ruling on the merits. *Id.* at *1[2], *4.

However, in the present case, the agency explicitly found that the "failure to provide complete information" led to the finding that Plaintiff "failed to establish good moral character and other prerequisites required by section 316(a) of the Act." (Decision, Doc. No. 1-1, at 9.) Under USCIS regulations, failure to submit all requested evidence may result in an adjudication on the merits based on the record as presented. *See* 8 C.F.R. § 335.7; 8 C.F.R. § 103.2(b)(14). The officer noted that Plaintiff's failure to respond to various questions or provide certain documentation led to the conclusion that Plaintiff was "requesting a decision based on the evidence you have submitted." (Decision, Doc. No. 1-1, at 8.) The officer based his ultimate denial of Plaintiff's application on his assessment of Plaintiff's moral character and other prerequisites of Section 316(a) of the Immigration and Nationality Act (8 U.S.C. § 1427(a)). The decision on appeal confirms this reading of the initial decision:

---

[2] The opinion cites to the USCIS decision. *See Omari v. Ashcroft et al.*, 3:05-cv-00397-P (N.D. Tex.), Defs.' Mot. Dismiss Ex. B, Doc. No. 22, at 15. A review of the USCIS decision makes clear that the ruling was not on the merits.

> Mr. Khawaja could certainly choose not to answer questions or comply with USCIS requests. However, in doing so, he curtailed the agency's ability to pursue lines of inquiry relevant to determining his eligibility for naturalization. Thus, he compelled USCIS to render a decision based on the record, as stipulated in 8 C.F.R. § 103.2(b)(14). His refusal to respond to pertinent inquiries obliged USCIS to draw a negative inference regarding those issues. Mr. Khawaja has still not provided the requested information or an explanation for his refusal to do so. He has failed to establish good moral character, as well as failing to demonstrate that he has met the physical presence and continuous residence requirements for naturalization.

(RE: Matter of Adnan Khawaja, Doc. No. 1-3, at 3–4 (citations omitted).) Accordingly, the Court cannot find that Plaintiff failed to exhaust his administrative remedies, as USCIS made a decision on the merits.

### B. Misrepresentations in Plaintiff's Interview and Application

Under 8 U.S.C. § 1421(c), the district court reviews USCIS's decision to deny a naturalization application *de novo*. *See also Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002). An applicant for naturalization must satisfy certain statutory and regulatory requirements. *See, e.g.*, 8 U.S.C. §§ 1101, 1427, 1429, 1430; 8 C.F.R. §§ 310, 312, 316. Under one such requirement, an applicant must demonstrate that he "has been and still is a person of good moral character" during the requisite time period, generally five years before the filing date of the application. 8 U.S.C. § 1427(a). If an applicant's conduct during the statutory period does not reflect "reform of character" from an earlier period, or if the earlier conduct appears "relevant to a determination of the applicant's current character," USCIS may consider conduct that occurred outside the five-year period. 8 C.F.R. § 316.10(a)(2); *see also* 8 U.S.C. § 1427(e) ("In determining whether the applicant has sustained the burden of establishing good moral character . . . , the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.").

6

An applicant's good moral character is evaluated on a case-by-case basis, accounting for the standards of the average citizen in the community of residence."  8 C.F.R. § 316.10(a)(2).  Certain statutory bars preclude a finding of good moral character.  *See* 8 U.S.C. § 1101(f).  Defendants assert that Plaintiff's Complaint must be dismissed because he is statutorily barred from establishing good moral character due to his (1) false testimony to the interviewing officer, under 8 U.S.C. § 1101(f)(6), and (2) other false statements on his application, considered to be "unlawful acts that adversely reflect upon the applicant's moral character" under 8 C.F.R. § 316.10(b)(3)(iii).

### 1. False Testimony

An applicant may not establish good moral character if he has "given false testimony for the purpose of obtaining any benefits under this chapter."  8 U.S.C. § 1101(f)(6).  "[E]ven the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits" will prevent a finding of good moral character.  *Kungys v. United States*, 485 U.S. 759, 779–80 (1988).  Accordingly, this provision bars only those misrepresentations made with the subjective intent to deceive; "[i]t is only dishonesty accompanied by this precise intent that Congress found morally unacceptable."  *Id.* at 780.

Plaintiff asserts that Defendants' Motion is inappropriate, as it makes arguments based on specific facts pertaining to the interview and administrative record.  The Court agrees that it may not resolve factual issues at this time.  However, Defendants are permitted to assert that the facts contained in the Complaint, which includes the decisions of the USCIS attached thereto, do not state a claim for relief under the relevant statue.  As stated above, Plaintiff may not obtain citizenship if he falls into a statutory bar to establishing good moral character.

Plaintiff's Complaint does not provide many additional factual allegations about his entitlement to citizenship aside from those contained in the USCIS decision, his appeal letter, and the appeal decision, attached to the Complaint.[3]  Plaintiff asserts that "he has never had an opportunity to show the numerous misstatements of fact in the administrative record" (Resp., Doc. No. 18, at 6); however, his opportunity to provide allegations of this nature is in the Complaint.  The appeal letter attached to Plaintiff's Complaint states that the applicant did not relinquish various documents or answer certain questions "on the advice of his attorney," based on his interpretation of the five-year statutory period.  (Re: Request for a Hearing on a Decision in Naturalization Proceedings by Adnan KHAWAJA, Doc. No. 1-2, at 2.)  However, Plaintiff's Complaint does not acknowledge or deny the misstatements that the officer noted, such as Plaintiff's oral testimony that he did not own any business and that he did not owe any taxes on those businesses.  (Decision, Doc. No. 1-1, at 6–7.)  Nor does he state that the misstatements were made without subjective intent.  Thus, the Court must dismiss Plaintiff's claim under 8 U.S.C. § 1421(c).  However, the Court will allow leave to amend, as Plaintiff's Response and appeal letter show allegations which may provide Plaintiff with a right to relief if pled differently.  Plaintiff should add allegations to overcome the deficiencies identified here and show he is not statutorily barred from proving good moral character based on the misstatements identified in the decisions attached to his Complaint.

---

[3] The few facts that Plaintiff does provide in the text of the Complaint itself, rather than the attachments, appear to be incorrect.  (*See* Compl. ¶ 7 (Plaintiff "is a 38 year old native and citizen of Iran."); Khawaja Aff. ¶ 3 ("I was born in Pakistan.  (I note that there is a typo on the complaint that states 'Iran' but that is not true.[)]").)  Plaintiff's affidavit does not clarify whether he is a citizen of Iran or Pakistan.

8

### 2.  Other False Statements in Plaintiff's Application

In the alternative, Defendants argue that Plaintiff cannot establish good moral character because he provided a false statement in his application.[4]  "Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant . . . [c]ommitted unlawful acts that adversely reflect upon the applicant's moral character."  8 C.F.R. § 316.10(b)(3)(iii).[5]  Defendants assert that Plaintiff's failure to note his membership or involvement in a private Islamic school and a local mosque, and his later admission of his affiliations with these organizations, was a false statement submitted with his naturalization application.[6]  Under 18 U.S.C. § 1015(d), an applicant who "knowingly makes any false certificate, acknowledgment or . . . the signature . . . by any person with respect to any application . . . relating to immigration, naturalization, [or] citizenship . . ." shall be fined or imprisoned not more than five years.  Defendants assert that, because Plaintiff violated 18 U.S.C. § 1015(d), he committed an unlawful act under 8 C.F.R. § 316.10(b)(3)(iii) that bars him from establishing good moral character.

However, under § 316.10(b)(3)(iii), the Court must find that the unlawful acts "adversely reflect upon the applicant's moral character."  Plaintiff also has an opportunity to prove extenuating circumstances.  The appeals letter, incorporated into his Complaint, does not deny that Plaintiff failed to list these affiliations, but states that "USCIS routinely allows naturalization applicants to amend their applications at the time of their interviews."  (Re: Request for a

---

[4] Although the Court has already dismissed Plaintiff's claim for *de novo* review under 8 U.S.C. § 1421(c), it evaluates Defendant's alternative argument in order to determine whether to allow leave to amend or whether the defects are incurable.

[5] This regulation is established pursuant to the Attorney General's authority to set forth "other reasons" affecting determinations of good moral character.  8 U.S.C. 1101(f); *see also United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005); *Etape v. Napolitano*, 664 F. Supp. 2d 498, 507 (D. Md. 2009).

[6] Defendants do not argue, and the Court similarly does not believe, that there is anything problematic about these affiliations or that these affiliations would bar Plaintiff from becoming a naturalized citizen.  Rather, Defendants take issue with Plaintiff's failure to include them in his application, and assert that this failure constitutes a statutory bar to a finding of good moral character.

Hearing on a Decision in Naturalization Proceedings by Adnan KHAWAJA, Doc. No. 1-2, at 3.) Plaintiff does not, however, tie this statement about USCIS procedure to any facts about his case, as he does not assert that he wished to amend his application at the interview. His Complaint also does not contain any explicit allegations that he believes that unlawful acts do not adversely reflect upon his moral character or that there were extenuating circumstances. Based on the allegations of the Complaint as currently pled, the Court must dismiss Plaintiff's claim under 8 U.S.C. § 1421(c) on this basis as well. The Court will allow Plaintiff to replead to provide allegations, such as those identified above, sufficient to overcome this regulatory bar to establishing good moral character.

### C.  Claims against the FBI

Defendants also argue that Plaintiff fails to state a claim against Robert Mueller, Director of the FBI, as the Complaint fails to allege that the FBI owed any duty to Plaintiff or that the FBI failed to perform a requisite check in the naturalization process. Plaintiff's Complaint provides no allegations detailing how the FBI could be held liable for either of Plaintiff's claims, brought under 8 U.S.C. § 1421(c) and the APA. Rather, the Attorney General has "sole authority to naturalize persons as citizens of the United States," 8 U.S.C. 1421(a), and USCIS is charged with adjudicating applications for naturalization. 6 U.S.C. § 271(b)(2). Plaintiff acknowledges that "it may technically be the USCIS who determines whether an applicant satisfies the criteria to be naturalized," but states that "the FBI's role – while not clearly visible to the applicant – can be assumed." (Resp. at 8.) Under the standard articulated above, the Court must evaluate Plaintiff's Complaint based on the allegations contained therein, and not based on speculation regarding a potential claim against the FBI. The Court must dismiss the claims against the FBI with prejudice.

### D. APA Claim

Plaintiff also asserts a claim under the APA that seeks review of the final adverse agency action because "USCIS's denial is arbitrary, capricious and contrary to law." (Compl. ¶¶ 28–32.) However, 5 U.S.C. § 704 limits review under the APA to instances where there is "no other adequate remedy in a court." "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (interpreting 5 U.S.C. § 704); *see also Escaler v. U.S. Citizenship & Immigration Services*, 582 F.3d 288, 291 (2d Cir. 2009) ("Nor have we been informed as to what judicial relief the APA might authorize that adds to the sweeping *de novo* review provided by Section 1421(c)."). Because Plaintiff has a remedy under 8 U.S.C. § 1421(c), the Court must dismiss his APA claim with prejudice.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's APA claim and any claims asserted against Robert Mueller, Director of the FBI are **DISMISSED WITH PREJUDICE**. Plaintiff's claim under 8 U.S.C. § 1421(c) against the remaining Defendants is **DISMISSED WITHOUT PREJUDICE** to filing an amended complaint within 20 days that will cure the deficiencies identified in this Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 21st day of May, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE